1  Patrick Carey, (Bar No. 30862)
2  Mark Todzo, (Bar No. 168389)
   **LEXINGTON LAW GROUP, LLP**
3  503 Divisadero Street
4  San Francisco, California 94105
   Telephone: (415) 913-7800
5  pcarey@lexlawgroup.com
6  mtodzo@lexlawgroup.com

7  Ian W. Sloss (*pro hac vice*)
8  **SILVER GOLUB & TEITELL LLP**
   One Landmark Square, 15th Floor
9  Stamford, Connecticut 06901
   Telephone: (203) 325-4491
10 isloss@sgtlaw.com
11

12 *Attorneys for Plaintiffs and the Proposed Class*

13

14              **UNITED STATES DISTRICT COURT**
15         **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

16 | S.T.G., S.B.G., and S.J.G., minors, by | Case No.: 24CV0517 RSH AHG
17 | and through their guardian SAMUEL |
18 | GARCIA, I.H. and E.H., by and through |
   | their guardian ARNOLD HERNANDEZ, |
19 | and M.A and E.V.A, by and through their | **PLAINTIFFS'**
20 | guardian STEPHANIE ALLEN, | **MEMORANDUM**
   | individually and on behalf of all others | **IN OPPOSITION TO**
21 | similarly situated, | **DEFENDANT  EPIC**
22 |                          Plaintiffs, | **GAMES, INC.'S**
   | | **MOTION TO COMPEL**
23 | v. | **ARBITRATION OR, IN**
24 | | **THE ALTERNATIVE, TO**
   | EPIC GAMES, INC., | **TRANSFER**
25 |                          Defendant. |
26
27
28

---

PLAINTIFFS' MEM OPP MOT COMPEL ARBITRATION OR IN THE ALTERNATIVE, TRANSFER

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

EPIC'S MARCH 15, 2019 EULA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

PLAINTIFFS HAVE EITHER DISAFFIRMED OR, IN THE CASE
OF E.V.A., IS NOT A SIGNATORY TO (OR OTHERWISE
BOUND BY) THE 2019 EULA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

I.      THE MINOR PLAINTIFFS IN THIS ACTION HAVE
        DISAFFIRMED THE EULA, AND THE ARBITRATION
        AND FORUM SELECTION PROVISIONS RELIED UPON
        BY EPIC ARE, THEREFORE, *VOID AB INITIO* . . . . . . . . . . . . . . . . . 8

        A.      Legal Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        B.      California Law Applies To Determine Whether a
                Valid Contract Exists . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        C.      Plaintiffs S.T.G., S.B.G., S.J.G, I.H., E.H. and M.A. Have
                Disaffirmed the 2019 EULA, and It Is, Therefore,
                *Void Ab Initio* as to Them . . . . . . . . . . . . . . . . . . . . . . . . 10

II.     EPIC'S MOTION TO COMPEL ARBITRATION IS BASED
        ON A DISAFFIRMED ARBITRATION PROVISION AND
        MUST BE DENIED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

III.    PLAINTIFF E.V.A. IS NOT BOUND BY HER PARENT'S
        AGREEMENT TO THE 2019 EULA . . . . . . . . . . . . . . . . . . . . . . . . 18

IV.   CLASS MEMBERS WHO STOPPED USING FORTNITE
      PRIOR TO MARCH 15, 2019 OR ASSERT CLAIMS BASED
      ON EPIC'S CONDUCT PRE-DATING MARCH 15, 2019,
      MUST BE EXCLUDED FROM ANY ORDER COMPELLING
      ARBITRATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

V.    EPIC'S MOTION TO TRANSFER IS BASED ON A
      DISAFFIRMED OR INAPPLICABLE CONTRACT PROVISION
      AND MUST BE DENIED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

      A.   The 2019 EULA's Forum Selection Provision Is *Void
           Ab Initio* Because the Minor Plaintiffs Have Disaffirmed
           the 2019 EULA or, in the Case of E.V.A. Is Not a
           Signatory to the 2019 EULA and Is Not Bound by It . . . . . . . . . . 20

      B.   Class Members Who Stopped Using Fortnite Prior to
           March 15, 2019 Are Not Subject to the EULA's
           Forum-Selection Provision . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

ii

# TABLE OF AUTHORITIES

Cases

                                                                                   Page

*A.B. by Turner v. Google LLC*,
        No. 23-cv-03101-PCP,
        2024 WL 3052969 (N.D. Cal. June 18, 2024) . . . . . . . . . . . . . . . . . . . . . 3

*Atlantic Marine Construction Co. v. U.S. District Court*,
        571 U.S. 49 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*B.F v. Amazon.com Inc.*,
        858 Fed. App'x. 218 (9th Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . 8, 18

*Berg v. Traylor*,
        148 Cal.App.4th 809 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Carr v. United States*,
        560 U.S. 438 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Celli v. Sports Car Club of Am., Inc.*,
        29 Cal.App.3d 511 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 12

*Circuit City Stores, Inc. v. Adams*,
        279 F.3d 889 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Coinbase, Inc. v. Suski*,
        144 S. Ct. 1186 (2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 17, 18

*Coughenour v. Del Taco, LLC*,
        57 Cal.App.5th 740 (2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Cronin v. Advanced Fresh Concepts Franchise Corp.*,
        No. 2:20-cv-00816-SVW-JPR,
        2020 WL 6391216 (C.D. Cal. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Deck v. Spartz, Inc.*,
    2:11-CV-01123,
    2011 WL 7775067 (E.D. Cal. Sept. 27, 2011) . . . . . . . . . . . . . 12, 16, 22

*Doe v. Epic Games*,
    435 F. Supp.3d 1024 (N.D. Cal. 2020) . . . . . . . . . . . . . . . . . . . . *passim*

*Doe v. Roblox Corp.*,
    602 F. Supp.3d 1243 (N.D. Cal. 2022) . . . . . . . . . . . . . . . . . . . . . 17

*Franz v. Hyundai Motor Am.*,
    No. 8:23-CV-01640-NS-ADS,
    2024 WL 176227 (C.D. Cal. Jan. 12, 2024) . . . . . . . . . . . . . . . . . 16

*Geoffrey v. Washington Mut. Bank*,
    484 F. Supp.2d 1115 (S.D. Cal. 2007) . . . . . . . . . . . . . . . . . . . . . 18

*Granite Rock Co. v. Int'l Brotherhood of Teamsters*,
    561 U.S. 287 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
    586 U.S. 63 (2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*I.B. ex rel. Fife v. Facebook, Inc.*,
    905 F. Supp.2d 989 (N.D. Cal. 2012) . . . . . . . . . . . . . . . . . . . . *passim*

*In re Ring LLC Privacy Litig.*,
    No. CV 19-10899-MWF,
    2021 WL 2621197 (C.D. Cal. June 24, 2021) . . . . . . . . . . . . . . . . 8, 19

*J.R. v. Electronic Arts, Inc.*,
    98 Cal.App.5th 1107 (2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Javier v. Carnival Corp.*,
    09-cv-2003-LAB, 2010 WL 3633173 (S.D. Cal. Sept. 13, 2010) . . . . . . 10

*Kamath v. Coinbase, Inc.*,
    No. 23-CV-03533-CRB,
    2024 WL 950163 (N.D. Cal. Mar. 5, 2024) . . . . . . . . . . . . . . . . . . 16

iv

*Knapke v. PeopleConnect, Inc.*,
    38 F.4th 824 (9th Cir. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Lopez v. Kmart Corporation*,
    No. 15-cv-01089-JSC,
    2015 WL 2062606 (N.D. Cal. May 4, 2015) . . . . . . . . . . . . . . 7, 13, 15

*Mohebbi v. Khazen*,
    No. 13-CV-03044-BLF,
    2014 WL 6845477 (N.D. Cal. Dec. 4, 2014) . . . . . . . . . . . . . . . . . . 20

*Morse v. Service Master Global Hldgs., Inc*,
    No. CV-10-00628-SI,
    2012 WL 4755035 (N.D. Cal. Oct. 4, 2012) . . . . . . . . . . . . . . . . . . 20

*N.A. v. Nintendo of Am., Inc.*,
    23-cv-01424, 2023 WL 8587628 (N.D. Cal. Dec. 11, 2023) . . . . . . . . . 17

*Poublon v. C.H. Robinson Co.*,
    846 F.3d 1251 (9th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*R.A. v. Epic Games*,
    No. 2:19-cv-01488,
    2019 WL 6792801 (C.D. Cal. July 30, 2019) . . . . . . . . . . . . . . . . *passim*

*Scollan v. Gov't Emp. Ins. Co.*,
    222 Cal.App.2d 181 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Sparks v. Sparks*,
    101 Cal.App.2d 129 (1950) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*T.K. v. Adobe Systems, Inc.*,
    17-CV-04595,
    2018 WL 1812200 (N.D. Cal. April 17, 2018) . . . . . . . . . . . . . . 13, 15

*Townsend v. Quadrant Corp.*,
    268 P.3d 917 (Wash. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Trans-Tec Asia v. M/V Harmony Container*,
　　518 F.3d 1120 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United Teachers of L.A. v. L.A. Unified School Dist.*,
　　54 Cal.4th 504 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Y.H. v. Blizzard Entertainment, Inc.*,
　　No. 8:22-CV-00998-SSS-ADSX,
　　2022 WL 17491821 (C.D. Cal. Nov. 29, 2022),
　　*vacated and remanded on other grounds*,
　　2023 WL 7015280 (9th Cir. Oct. 25. 2023) . . . . . . . . . . . . . . . . 12, 14

*Y.H. v. Blizzard Entertainment, Inc.*,
　　No. 8:22-CV-00998-SSS-ADSX,
　　2023 WL 3565078 (C.D. Cal. Feb. 27, 2023) . . . . . . . . . . . . . . . . . 7

Statutes:

9 U.S.C. § 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

9 U.S.C. § 4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

15 U.S.C. § 6501 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

15 U.S.C. § 6502 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1391(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

28 U.S.C. § 1404(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 20, 21

Cal. Civ. Code § 1568.5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Cal. Family Code, § 6500 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Cal. Family Code, § 6710 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Fed. R. Civ. P. 12(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

PLAINTIFFS' MEM OPP MOT COMPEL ARBITRATION OR IN THE ALTERNATIVE, TRANSFER

1

<u>Other Authorities</u>:

2

16 C.F.R. Part 312.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

3

4

144 Cong. Rec. S12787 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MEM OPP MOT COMPEL ARBITRATION OR IN THE ALTERNATIVE, TRANSFER

## INTRODUCTION

Seven minor Plaintiffs, by their respective guardians,[1] submit this Memorandum in opposition to the Motion to Compel Arbitration or, in the alternative, to Transfer ("Motion") filed by Defendant Epic Games, Inc. ("Epic" or "Defendant") (ECF 12).

Epic's Motion should be denied because it is based on an agreement that has been disaffirmed by the minor Plaintiffs and is, thus, *void ab initio* in all respects; *see Doe v. Epic Games*, 435 F. Supp.3d 1024, 1035-37, 1040 n. 11 (N.D. Cal. 2020) (minor's disaffirmance of Epic agreement renders arbitration and forum selection provisions a nullity); *R.A. v. Epic Games*, No. 2:19-cv-01488, 2019 WL 6792801, at *5-7 (C.D. Cal. Jul. 30, 2019) (same); and because one of the minor Plaintiffs ( E.V.A.) is not, in any event, bound by her parent's acceptance of the agreement. *See B.F v. Amazon.com Inc.*, 858 Fed. App'x. 218, 220-21 (9th Cir. 2021) (arbitration provision in online user agreement accepted by parent does not bind minor [applying Washington law]).

## BACKGROUND

This putative class action arises out of Defendant's unlawful business practices and invasions of the privacy of millions of children under the age of 13. The Children's Online Privacy Protection Act ("COPPA"), 15 U.S.C. § 6501, *et seq.*, was enacted by Congress in 1998 to "protect children's privacy by limiting the collection of personal information from children without parental consent." *See* 144 Cong. Rec. S12787. The Act expressly prohibits an online operator from collecting designated personal information of children under the age of 13 without notice to and consent from the child's parent. 15 U.S.C. § 6502(a) & (b); 16 C.F.R. Part 312.1, *et seq.*

---

[1] The minor Plaintiffs bring this action by and through their respective *guardians ad litem*. *Id.* ¶¶ 26, 29 and 32. A *guardian ad litem* "is not a party to the action; instead he or she is a representative of record of a party who lacks the capacity to sue." *I.B. ex rel. Fife v. Facebook, Inc.*, 905 F. Supp.2d 989, 1004 (N.D. Cal. 2012).

Defendant Epic is the developer and distributor of Fortnite, a popular video game which is "purposefully designed to appeal to younger children." Complaint ¶ 4. The Complaint alleges that Epic generates billions of dollars in revenue based on its collection and exploitation of highly sensitive and COPPA-protected "Personal Information" of children under the age of 13, including the names and "persistent identifiers" of children such as IP addresses or unique device identifies or cookies that track a child's activity online, geolocation information, photos, videos and audio recordings. Epic is alleged to use this information to "facilitate in-game purchases, target advertising and sell merchandise" to very young children. *Id.* ¶¶ 7, 9, 11-12. The collection and exploitation of such information from children under the age of 13 without verifiable parental consent, is expressly prohibited by COPPA. See 16 C.F.R. Part 312.1, *et seq.*

On December 22, 2022, Epic entered into a permanent injunction with the Federal Trade Commission ("FTC") which, *inter alia,* barred Epic from using privacy-invasive default setting to collect data from children under the age of 13 without verifiable parental notice and consent, required Epic to establish privacy default settings, mandated the deletion of information previously collected, established reporting requirements, and imposed a $275 million civil penalty on Epic for its COPPA violations. Complaint ¶¶ 14-16.

Epic's settlement with the FTC did not provide individual relief to children whose Personal Information was illegally collected by Epic.[2] Accordingly, Plaintiffs, through their guardians, have now brought this action for monetary damages and equitable relief on behalf of themselves and all similarly-situated children injured by

---

[2] In a separate administrative order, Epic was also ordered Epic to pay $245 million as refunds to consumers victimized by Epic's deceptive practices into purchasing unwanted items.

2

Epic's illegal conduct. *Id.* ¶¶ 8-10 Plaintiffs and the classes they seek to represent are comprised of children who are "younger than the age of 13, or were younger than the age of 13 when they created an Epic account . . . and played any version of Fortnite, and from whom Epic collected, used or disclosed Personal Information without first obtaining verified parental consent." *Id.* ¶¶ 99-101.

The minor Plaintiffs are S.T.G., S.B.G., and S.J.G. (by their parent and guardian, Samuel Garcia); I.H. and E.H. (by their parent and guardian, Arnold Hernandez); and M.A. and E.V.A. (by their parent and guardian, Stephanie Allen). Each of the minor Plaintiffs began playing Fortnite during the Class Period while under the age of 13. The Garcias and the Hernandezes are residents of California. The Allens are residents of the State of Washington. *Id.* ¶¶ 23-32.

The Complaint asserts claims based on "Intrusion Upon Seclusion" (Claim One), ¶¶ 110-16; California's Unfair Competition Law (Claim Two), ¶¶ 117-24; California's Constitutional Right to Privacy (Claim Three), ¶¶ 125-32; California Unjust Enrichment, ¶¶ 133-39; Washington's Consumer Protection Act (Claim Five), ¶¶ 140-65; and Washington Unjust Enrichment (Claim Six), ¶¶ 166-73. *See A.B. by Turner v. Google LLC*, No. 23-cv-03101-PCP, 2024 WL 3052969, *7-10 (N.D. Cal. June 18, 2024) (denying motion to dismiss state privacy, consumer protection law and unjust enrichment claims brought by minors subjected to collection of their online personal data in violation of COPPA).

The Complaint identifies three proposed classes – and asserts claims on behalf of persons "who are younger than the age of 13, or were younger than the age of 13 when they created an Epic account . . . and played any version of Fortnite, and from whom Epic collected, used, or disclosed Personal Information without first obtaining verified parental consent." Complaint ¶¶ 99-101. The three classes (together the "Classes") are: (1) an "Intrusion on Seclusion Class" on behalf of qualifying persons

3

1    in 33 states; (2) a "California Class" on behalf of qualifying California residents; and

2    (3) a "Washington Class" on behalf of qualifying Washington residents. *Id.* The

3    "Class Period" is July 21, 2017 through February 20, 2023. Complaint ¶ 1.

4                            **EPIC'S MARCH 15, 2019 EULA**

5       In support of its Motion, Epic seeks to enforce an arbitration provision in its

6    March 15, 2019 Fortnite End User License Agreement (the "2019 EULA")[3] or,

7    alternatively, a forum selection provision in that Agreement requiring any action to be

8    brought in North Carolina state or federal courts.[4]

9       Epic asserts, through the Declaration of Joshua D. Shaw, an Epic "eDiscovery

10

                _____

11    [3] The arbitration provision that Epic relies upon in its Motion states, in pertinent part:

12

13       You and Epic agree to submit all Disputes between you and Epic to individual
       binding arbitration. "Dispute" means any dispute, claim, or controversy . . .

14       between you and Epic that relates to your use or attempted use of Epic's
       products or services and Epics products and services generally, including

15       without limitation the validity, enforceability, or scope of this Binding Individual

16       Arbitration section.

17    *See* Declaration of Joshua D. Shaw, filed May 20, 2024 ("Shaw Dec.") (ECF 12-2),

18    ¶¶ 5–9, Exhibit A (2019 EULA, § 12.3.1).

19    [4] The forum selection provision relied upon by Epic is in § 11 of the 2019 EULA and

20    provides:

21       This Agreement is entered into in the State of North Carolina, U.S.A., and shall

22       be governed by and construed in accordance with the laws of the State of North
       Carolina, exclusive of its choice of law rules. For any Disputes deemed not

23       subject to binding individual arbitration, as provided in the [EULA's arbitration

24       provision] you and Epic agree to submit to the exclusive jurisdiction of the
       Superior Court of Wake County, North Carolina, or if federal court jurisdiction

25       exists, the United States District Court for the Eastern District of North

26       Carolina.

27    *Id.* Exhibit A, § 11.

28

PLAINTIFFS' MEM OPP MOT COMPEL ARBITRATION OR IN THE ALTERNATIVE, TRANSFER

Specialist," that (1) "[w]hen users download the Fortnite software" on any device or platform, they are required to accept "the Fortnite End User License Agreement;" (2) the EULA (since March 15, 2019, but not before) has required Fortnite users to arbitrate all disputes with Epic; and (3) to the extent any dispute is found not to be arbitrable, the 2019 EULA requires that such dispute be litigated in either state or federal court in North Carolina.[5]

Epic asserts that the minor Plaintiffs, either themselves or through a parent, electronically agreed to the provisions of the 2019 EULA.[6] Based on these assertions, Epic argues that each of the Plaintiffs is bound by the 2019 EULA's arbitration and choice of forum provisions and that the Court must compel arbitration of the claims set forth in the Complaint, or, in the alternative (for any claims that are not arbitrable), transfer this action to North Carolina.

In his Declaration, Shaw admits that prior to Epic's March 15, 2019 EULA did not contain any arbitration provision. *Id.* ¶¶ 5-9. Shaw states that, on that date, Epic "updated the EULA to include . . . an arbitration requirement, and it caused the updated EULA . . . to be displayed to all users the first time they attempted to play Fortnite on or after March 15, 2019, before they could begin or continue to play Fortnite." *Id.* ¶ 5. According to Shaw, "[t]o proceed with playing Fortnite, both for existing account holders as of March 15, 2019, and people who have created accounts since then, each user (or a minor user's parent or guardian) is required to first place a mark in the check-box . . . that states 'I have read and agree with the [EULA],' and then to click the

---

[5]  *See* Shaw Dec. ¶¶ 2-9; Defendant's Motion to Compel Arbitration, or in the Alternative to Transfer to the Eastern District of North Carolina pursuant to 28 U.S.C. § 1404(a) ("Def. Br."), at 2-4.

[6]  Shaw Dec. ¶¶ 13-18; Def. Br. at 6.

PLAINTIFFS' MEM OPP MOT COMPEL ARBITRATION OR IN THE ALTERNATIVE, TRANSFER

'Accept' button." *Id.* ¶ 7.  Shaw attaches the March 15, 2019 version of the EULA to his Declaration as Exhibit A, and Epic relies on that version in its Motion.

Epic relies on § 11 of the 2019 EULA in support of its alternative Motion to Transfer pursuant to 28 U.S.C. § 1404(a).  Def. Br. 8-9, 13-14.  Shaw's Declaration is silent as to whether any version of the Epic EULA prior to March 15, 2019 contained this or any similar provision, and Epic has not presented other evidence (and does not argue) that the provision existed in prior EULAs.  Indeed, the provision in the 2019 EULA references the newly-added requirement of arbitration and, thus, clearly did not exist in its 2019 form in prior EULAs.

The "Class Period" in this case runs from July 21, 2017 through February 20, 2023.  Complaint ¶ 1.  As discussed more fully below, the fact that the EULA had no arbitration provision prior to March 15, 2019 means that (1) there is no basis to compel arbitration as to any members of the Classes who opened an Epic account on or after July 21, 2017, and stopped using Fortnite prior to March 15, 2019, or to (2) require arbitration as to any claims by any Class member based on Epic's conduct pre-dating March 15, 2019.  *See* Point III below.  Similarly, there is no contractual basis to enforce the 2019 EULA's forum selection clause against class members who stopped using Fortnite prior to March 15, 2019.  See Point V(B) below.

**PLAINTIFFS HAVE EITHER DISAFFIRMED OR, IN THE CASE OF E.V.A., IS NOT A SIGNATORY TO (OR OTHERWISE BOUND BY) THE 2019 EULA.**

Under California law, by filing this action, each of the minor Plaintiffs has disaffirmed all relevant versions of the EULA.  *Coughenour v. Del Taco, LLC*, 57 Cal.App.5th 740, 748 (2020) ("The filing of a lawsuit is sufficient disaffirmance"); *Celli v. Sports Car Club of Am., Inc.*, 29 Cal.App.3d 511, 517 (1972) ("Disaffirmance may be made by any act or declaration and express notice to the other party is unnecessary. The filing of an action is sufficient.").

The federal courts have unhesitatingly applied these principles of California law. *See Y.H. v. Blizzard Entertainment, Inc.*, No. 8:22-CV-00998-SSS-ADSX, 2023 WL 3565078, at *3 (C.D. Cal. Feb. 27, 2023) ("[T]here is simply no disagreement in the case law as to whether a minor's initiation of a lawsuit is sufficient to disaffirm a contract—the answer is unequivocally yes," citing cases); *Lopez v. Kmart Corporation*, No. 15-cv-01089-JSC, 2015 WL 2062606, at *5 (N.D. Cal. May 4, 2015) ("Filing the instant action was sufficient to disaffirm the contract.")

Moreover, although unnecessary under California law, minor Plaintiffs S.B.G., S.T.G. and S.J.G. have each submitted sworn declarations (1) stating that each was under the age of 13 at the time he or she established an Epic account and "accepted" the terms of any version of the EULA; and (2) disaffirming the EULA in its entirety.[7] Also, Samuel Garcia, their parent and guardian, has submitted a sworn Declaration stating that he did not download or install Fortnite or create an account with Epic on his or her child's behalf, or see, read or agree to Epic's EULA or Amended EULA and did not agree or give his or her child permission to accept any version of the EULA.[8]

As shown below, either the filing of this action or the submission of a minor Plaintiff's declaration disaffirming the EULA operates, as a matter of law, to void the EULA and its arbitration, choice of law and forum selection provisions, requiring rejection of Epic's attempts in its Motion to enforce its provisions.

Finally, Shaw's Declaration suggests that Washington Plaintiffs M.A. and E.V.A. did not create their own Epic accounts, but rather played Fortnite through Epic accounts established by their mother, Stephanie Allen. In fact, M.A. created his own

---

[7] *See* Declarations of S.B.G., S.T.G. and S.J.G. at ¶¶ 2, 10.

[8] *See* Declaration of Samuel Garcia at ¶¶ 2,4.

Epic account, but E.V.A. did play Fortnite through an account created by her mother. *See* Declaration of Stephanie Allen, at ¶ 3. Under such circumstance, E.V.A. is not a signatory to or otherwise bound by Epic's 2019 EULA. *B.F.*, 858 Fed. App'x. at 220-22; *see also In re Ring LLC Privacy Litig.*, No. cv-19-10899-MWF, 2021 WL 2621197, at *7 (C.D. Cal. June 24, 2021) (California law: minor plaintiffs are not bound by arbitration provision in contracts to which they are not signatories unless such contracts are for "necessities," such as medical services and education).

## ARGUMENT

**I. THE MINOR PLAINTIFFS IN THIS ACTION HAVE DISAFFIRMED THE EULA, AND THE ARBITRATION AND FORUM SELECTION PROVISIONS RELIED UPON BY EPIC ARE, THEREFORE, *VOID AB INITIO*.**

### A. Legal Standards

The Federal Arbitration Act "reflects the fundamental principle that arbitration is a matter of contract." *Coinbase, Inc. v. Suski*, 144 S. Ct. 1186, 1192 (2024). As a result, arbitration agreements are "valid, irrevocable and enforceable, *save upon such grounds as exist at law or in equity for the revocation of any contracts*." *Id.*, quoting 9 U.S.C. § 2 (emphasis added). Thus, "before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019), citing 9 U.S.C. § 2. And the savings clause of § 2 of the FAA "permits agreements to arbitrate to be invalidated by generally applicable contract defenses . . . but not by defenses that apply only to arbitration . . . ." *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1259 (9th Cir. 2017). State contract law determines the validity or revocability of arbitration agreements. *See, e.g., Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002); *see also Granite Rock Co. v. Int'l Brotherhood of Teamsters*, 561 U.S. 287,

8

296-97 (2010).

In *Suski*, the Supreme Court made clear this year that it is for the courts, not the arbitrator, to determine the validity of an arbitration agreement, including the validity of a delegation clause in an arbitration agreement. 144 S. Ct. at 1194.

In evaluating a motion to compel arbitration, courts treat the facts as they would when ruling on a motion for summary judgment, construing all facts and reasonable inferences that can be drawn from those facts in a light most favorable to the non-moving party. *Geoffrey v. Washington Mut. Bank*, 484 F. Supp.2d 1115-19 (S.D. Cal. 2007). If there is a factual dispute about whether an agreement to arbitrate was made, the court must try the issue. 9 U.S.C. § 4 ("If the making of the arbitration agreement. . . be in issue, the court shall proceed summarily to the trial thereof").

## B. California Law Applies To Determine Whether a Valid Contract Exists.

Two federal district courts in California have specifically held that California law governs the issue of whether minor plaintiffs who have disaffirmed Epic's EULA can be compelled to arbitrate under the EULA. *Doe v. Epic Games,* 435 F.Supp.3d at 1035, n. 2 ("Plaintiff asserts that California law applies to the Court's disaffirmance analysis, and defendant does not appear to disagree"); *R.A. v. Epic Games*, 2019 WL 6792801, at *6 (rejecting Epic's argument that North Carolina law applies). Those holdings are correct for several reasons.

First, the EULA's North Carolina choice-of-law provision cannot apply because "[a] choice-of-law provision does not govern what law applies to determine whether there is a contract in the first place." *Trans-Tec Asia v. M/V Harmony Container*, 518 F.3d 1120, 1124 (9th Cir. 2008). Applying a contractual choice-of-law provision to the analysis of whether a contract was formed "put[s] the barge before the tug" by assuming that the contract containing the choice-of-law was properly agreed to. *Id.*

9

Accordingly, the choice-of-law issue here should be analyzed "as if there were no choice of law clause." *Id.* Based on *Trans-Tec*, the court in *R.A. v. Epic Games* expressly rejected Epic's argument that the EULA's choice-of-law provision should control "which state's disaffirmation law applied." 2019 WL 6792801, at *5; *see also Javier v. Carnival Corp.*, 09-cv-2003-LAB, 2010 WL 3633173, at *3 (S.D. Cal. Sept. 13, 2010).

Moreover, there is no conflict between the laws of California, Washington and North Carolina with respect to the power of minor children to disaffirm, and, absent a conflict, no choice of law analysis is required, and the law of the forum applies. *See Knapke v. PeopleConnect, Inc.*, 38 F.4th 824, 832 (9th Cir. 2022) ("Absent [an actual conflict], the forum may apply its own law"); *see also Cassirer v. Thyssen-Bornemisza Collection Foundation*, 89 F.4th 1226, 1234 (9th Cir. 2024) (California choice-of-law analysis is only triggered when a "true conflict exists" between the relevant laws of two jurisdictions). And here, in both *Doe v. Epic Games* and *R.A. v. Epic Games*, the courts found that California and North Carolina law were substantially the same. *Doe v. Epic Games*, at 1035 ("In any event, both California and North Carolina law recognize a minor's right to disaffirm, and the disaffirmance analysis would not necessarily vary based on which law was applied"); *R.A. v. Epic Games*, 2019 WL 6792801, at 5 ("Both parties agree that California and North Carolina law recognize a minor's right to disaffirm and that the disaffirmation analysis would not necessarily vary depending on which state law is applied.").

C. **Plaintiffs S.T.G., S.B.G., S.J.G, I.H., E.H. and M.A. Have Disaffirmed the 2019 EULA, and It Is, Therefore, *Void Ab Initio* as to Them.**

In California, it is well-established that the law "shields minors from their lack of judgment and experience and confers upon them the right to avoid their contracts in order that they may be protected against their own improvidence and the designs

10

and machinations of other people, thus discouraging adults from contracting with them." *J.R. v. Electronic Arts, Inc.*, 98 Cal.App.5th 1107, 1115 (2024), quoting *Sparks v. Sparks*, 101 Cal.App.2d 129, 137 (1950).

This rule is codified in California's Family Code, § 6710, which states that "[e]xcept as otherwise provided by statute, a contract of a minor may be disaffirmed by the minor before majority or within a reasonable time afterwards . . . ."[9] A minor is defined in the California Family Code as "an individual who is under 18 years of age," California Family Code, § 6500, and here, each minor plaintiff is alleged either to be "younger than 13," or to have been "younger than the age of 13 when they created [their] Epic account . . . ." *See* Complaint ¶¶ 99-101.[10]

"Disaffirmance of a contract by a minor . . . has the effect of a rescission . . . . The effect of a rescission is to void the contract *ab initio* . . . . The contract becomes a nullity; and each of its terms and provisions cease to be subsisting or enforceable against the other party ...." *Scollan v. Gov't Emp. Ins. Co.*, 222 Cal.App.2d 181, 183 (1963) (citations omitted); *accord I.B. ex rel. Fife*, 905 F. Supp.2d at 1000 ("Disaffirmance by a minor rescinds the entire contract, rendering it

---

[9] The contracts minors cannot disaffirm are identified in California Family Code § 6712 as contracts for "things necessary for the support of the minor" which "have been actually furnished to the minor or to the minor's family," and the contract has been entered into by the minor "when not under the care of a parent or guardian able to able to provide for the minor or the minor's family." No such contract is at issue here.

[10] The rule is substantially the same in Washington and North Carolina. In Washington, the age of majority is 18, Wash. Dom. Rel. Law, § 26.28.010, and minors are authorized to disaffirm their contracts pursuant to § 26.28.030. The same is true in North Carolina. *Creech ex rel. Creech v. Melnik*, 147 N.C. App. 471, 476 (2001) ("[i]n North Carolina, agreements or contracts, except for those dealing with necessities and those authorized by statute, "may be disaffirmed by the infant during minority or within a reasonable time of reaching majority").

a nullity"); *Deck v. Spartz, Inc.*, 2:11-CV-01123, 2011 WL 7775067, at *6 (E.D. Cal. Sept. 27, 2011) (The effect of disaffirmation is that "all terms of the contract are . . . legally void") .

Under California law, "[n]o specific language is required to communicate an intent to disaffirm." *Berg v. Traylor*, 148 Cal.App.4th 809, 820 (2007). Rather, "a minor's power to disaffirm a contract is broad" and can be invoked "by any act or declaration" that conveys his intent to repudiate. *Doe v. Epic Games*, 435 F. Supp.3d at 1036. Thus, as noted above, "the filing of a lawsuit is sufficient disaffirmance. *Coughenour*, 57 Cal.App.5th at 748; *Celli*, 29 Cal.App.3d at 517; *Y.H. v. Blizzard Entertainment*, 2022 WL 17491821, at *3 (C.D. Cal. Nov. 29, 2022), vacated and remanded on other grounds, 2023 WL 7015280, at *1-2 (9th Cir. Oct. 25. 2023) (subject matter jurisdiction issue), and 2023 WL 3565078, at *3. And the court in *J.R. v. Electronic Arts, Inc.*, 98 Cal.App.5th at 1115, also found it sufficient for the plaintiff to state – in a declaration opposing defendant's motion to compel arbitration – that he "disaffirm[s] the entirety of any [user agreement], contract or agreement that was accepted through [his Electronic Arts] account." *Id.* (affirming denial of motion to compel arbitration).

Here, the Complaint alleges that all of the minor Plaintiffs, and each member of the Classes were, at all relevant times, under the age of 13. Complaint ¶¶ 23-32; 99-101. Accordingly, the filing of this lawsuit establishes that each named Plaintiff has disaffirmed all relevant versions of the EULA in their entirety. *Coughenour*, 57 Cal.App.5th at 748. Moreover, minor Plaintiffs S.B.G., S.T.G., and S.J.G. have also submitted declarations in which each has unambiguously disaffirmed the EULA "in its entirety." *See* Declarations of S.B.G., S.T.G., and S.J.G., at ¶ 10. Accordingly, the 2019 EULA, upon which Epic relies for all aspects of its Motion, is disaffirmed and

12

*void ab initio* as to S.B.G., S.T.G., S.J.G., I.H., E.H and M.A.[11]

## II.    EPIC'S MOTION TO COMPEL ARBITRATION IS BASED ON A DISAFFIRMED ARBITRATION PROVISION AND MUST BE DENIED.

As noted above, in two cases very similar to this one – involving Epic and the same 2019 EULA provisions as those at issue here – federal courts in California have held that the minor plaintiffs and putative class representatives could not be compelled to arbitrate under the 2019 EULA's arbitration provision because the plaintiff had effectively disaffirmed the EULA agreement. *Doe v. Epic Games*, 435 F. Supp.3d at 1038 ( "Because plaintiff validly disaffirmed the EULAs, plaintiff cannot be compelled to arbitrate this dispute pursuant to the arbitration provision contained in the amended EULA"); *R.A. v. Epic Games*, 2019 WL 6792801, at *3, *5-7 ("Since Plaintiff validly disaffirmed the 2019 EULA, the Court need not reach the validity of the arbitration provision contained therein, and would accordingly deny Defendant's motion to compel arbitration").

These decisions are in accord with numerous other federal and state cases that, applying California law, have declined to enforce arbitration agreements contained in agreements that have been disaffirmed by minors. *J.R. v. Electronic Arts*, 98 Cal.App.5th at 1115 (denying motion to compel arbitration based on minor's disaffirmance of the arbitration agreement); *T.K. v. Adobe Systems, Inc.*, 17-CV-04595, 2018 WL 1812200, at *4-6 (N.D. Cal. April 17, 2018) (minor "is not bound by arbitration or class action provisions of [the] disaffirmed contract"); *Lopez*, 2015 WL 2062606, at *4-5, *7 (minor "plaintiff has exercised his statutory right of disaffirmance, thereby rescinding the contract and rendering it a nullity . . . . [T]here is no valid

---

[11] To the extent Epic might offer evidence that E.V.A. herself accepted the 2019 EULA, her filing of this action would disaffirm the agreement as it does for the other Plaintiffs.

---

1  agreement to arbitrate"); *Y.H. v. Blizzard Entertainment*, 2022 WL 17491821, at *3

2  (C.D. Cal. Nov. 29, 2022) (rejecting motion to compel arbitration based on

3  disaffirmance of agreement containing arbitration provision), *vacated and remanded*

4  *on other grounds*, 2023 WL 7015280, at *1-2 (9th Cir. Oct. 25. 2023) (subject matter

5  jurisdiction issue); *see also I.B. ex rel. Fife*, 905 F. Supp.2d at 1001-04 ("Under

6  California law, a minor may 'disaffirm all obligations under a contract, even for

7  services previously rendered, without restoring consideration or the value of services

8  rendered").

9      As these decisions show, the Court should deny Epic's Motion to Compel

10  Arbitration.

11      Disregarding this case law (including the decisions in *Doe v. Epic Games* and

12  *R.A. v. Epic Games,* where Epic's prior attempts to enforce the 2019 EULA's

13  arbitration agreement in the face of a minor's disaffirmance of the agreement were

14  expressly rejected), Epic argues that the EULA's arbitration provision should be

15  enforced because:

16      (1) the 2019 EULA recites (a) that persons "must be an adult" to agree
       to the EULA; (b) that a person accepting the EULA must affirm that he
17      or she has "reached the legal age of majority; and (c) that, if a signatory
       is under the legal age of majority, the signatory's "parent or legal guardian
18      must consent" to the EULA, *see* Def. Br. 4-5;

19
20      (2) "any doubts concerning the scope of arbitrable issues should be
       resolved in favor of arbitration," *id.* 6, and "Plaintiff's claims are within
21      the scope of the [EULA's] arbitration requirement," *id.* 11-12;

22
23      (3) the 2019 EULA's "clickwrap" form is legally enforceable, *id.* 7, 9-10;

24
25      (4)   "Plaintiffs do not allege that they opted out of the arbitration
       requirement," *id.* 5; and
26

27      (5)  the "EULA expressly delegates to the arbitrator all disagreements

28

14

over the 'validity, enforceability, or scope of' the arbitration requirement." *id.* 12 (citing § 12.3.1 of the 2019 EULA), so such issues must be decided by the arbitrator.

But even if these arguments were otherwise correct, none would support Epic's Motion to Compel Arbitration, because California courts have repeatedly held that minors' disaffirmances of comparable agreements – specifically including EPIC's EULA – are effective and preclude arbitration based on the arbitration provisions contained in those agreements. *Doe v. Epic Games*, 435 F. Supp.3d at 1035; *R.A. v. Epic Games*, 2019 WL 6792801, at *3, *5-7; *J.R. v. Electronic Arts, Inc.*, 98 Cal.App.5th at 1115; *T.K. v. Adobe Systems, Inc.*, 2018 WL 1812200, at *4-6; *Y.H. v. Blizzard Entertainment, Inc.*, 2022 WL 17491821, at *3; *Lopez*, 2015 WL 2062606, at *7; see *I.B. ex rel. Fife*, 905 F. Supp.2d at 1001-04. In particular, Epic's suggestion that the minor Plaintiffs are bound by the EULA's recital that "[i]f you are under the legal age of majority, your parent or legal guardian must consent to this Agreement" should be rejected because – under California law – "[a] representation by a minor that the minor's parent or legal guardian has consented shall not be considered to be consent..." *See* Cal. Civ. Code, D.3, Pt.2, T.1, Ch.3, § 1568.5.

In light of these decisions, and each minor Plaintiff's disaffirmance of the EULA, the court need not address the various contract-based issues posed in Epic's Motion. The EULA is a nullity, so it makes no difference whether the "disputes" described in the EULA fall within the "scope" of its arbitration agreement, *see* Def. Br. 6, 11-12; nor must the Court resolve the question of whether Defendant's "clickwrap" EULA agreement might be legally effective (if asserted against an adult counterparty), *id.* 7, 9-10; nor can the minor Plaintiffs be bound by Epic's self-serving recitals in the EULA, *id.* 4-5; nor can they be contractually required to "opt-out" of the EULA. Having been disaffirmed, the EULA's arbitration provision, and all of the other

15

1  contractual provisions Epic invokes in support of arbitration (and transfer), are *void*

2  *ab initio.*

3       Also incorrect is Defendant's further argument that the EULA's "delegation"

4  provision (§ 12.3.1) – purporting to delegate to the arbitrator all disagreements over

5  the "validity, enforceability, or scope" of the EULA's arbitration provision – requires

6  that the "validity" or "enforceability" of the EULA's arbitration provision must be

7  decided by an arbitrator. Def. Br. 12. In support of this argument, Epic cites *Cronin*

8  *v. Advanced Fresh Concepts Franchise Corp.*, No. 2:20-cv-00816-SVW-JPR, 2020

9  WL 6391216, at *2 (C.D. Cal. 2020); *Kamath v. Coinbase, Inc.*, No. 23-CV-03533-

10  CRB, 2024 WL 950163, *6-7 (N.D. Cal. Mar. 5, 2024); and *Franz v. Hyundai Motor*

11  *Am.*, No. 8:23-CV-01640-NS-ADS, 2024 WL 176227, at *6 (C.D. Cal. Jan. 12, 2024).

12  However, none of those cases involved agreements disaffirmed by minors – a situation

13  which, inherently, "void[s] the contract *ab initio*" and makes it a "nullity," *Scollan*,

14  222 Cal.App.2d at 183; *I.B. ex rel. Fife*, 905 F. Supp.2d at 1000 (disaffirmance voids

15  all of the provisions of an agreement, "rendering it a nullity"); *Deck*, 2011 WL

16  7775067, at *6 ("all terms of the contract are . . . legally void").

17       California courts have expressly rejected the contention that a delegation

18  provision in a disaffirmed contract can require a court to compel minor plaintiffs to

19  arbitrate. *J.R. v. Electronic Arts*, 98 Cal.App.5th at 1116. As the court stated in *J.R.*

20  "the consequence of the disaffirmance in J.R. II's declaration is that there are no

21  agreements between J.R. II and [Electronic Arts] that J.R. II accepted through his

22  [Electronic Arts] account but has not disaffirmed. Therefore, as the trial court

23  concluded, "there is no arbitration agreement to enforce." *Id.*

24       Indeed, the Supreme Court has recently made clear that delegation provisions

25  are subject to the same threshold judicial determination as other parts of an arbitration

26  agreement – *i.e.*, the parties must be found, *by a court*, to have validly agreed to the

27

28

1    relevant delegation provision.  As the court stated in *Suski*:

2      . . . [W]here a challenge applies "equally" to the whole contract and to an
3      arbitration or delegation provision, <u>a court must address that challenge</u>. *Rent-A-*
       *Center*, 561 U.S. at 71 . . . .  Again, basic principles of contract and consent
4      require that result. <u>Arbitration and delegation agreements are simply contracts,</u>
5      <u>and normally, if a party says that a contract is invalid, the court must address</u>
       <u>that argument before deciding the merits of the contract dispute.</u>  So too here.
6      "If a party challenges the validity . . . of the precise agreement to arbitrate at
7      issue, the federal court *must* consider the challenge before ordering compliance
       with that arbitration agreement." *Ibid.*
8

9    *Suski*, 144 S. Ct. at 1194 (underscoring added; italics in original).

10     Here, Plaintiffs' disaffirmances apply "equally" to the EULA as a whole and to

11   the EULA's arbitration and delegation provisions, and the Court must, accordingly,

12   address whether Plaintiffs, as minor children, can be forced to arbitrate under an

13   agreement that – because of their disaffirmance – is "*void ab initio*" and a "nullity."[12]

14   _____

15   [12]  It should be noted that in *N.A. v. Nintendo of Am., Inc.*, 23-cv-01424, 2023 WL
16   8587628, at *4-5 (N.D. Cal. Dec. 11, 2023), decided before *Suski*, a Magistrate Judge
     held that a minor's disaffirmance of a contract raises issues of "enforceability" (rather
17   than validity), and that where the contract delegates the determination of enforceability
18   to the arbitrator, the validity of a disaffirmed arbitration agreement is subject to
     arbitration.  The *N.A.* court relied on *Three Valleys Mun. Water Dist. v. E.F. Hutton*
19   *& Co., Inc.,* 925 F.2d 1136 (9th Cir. 1991) – a case  involving a claim that an
20   arbitration agreement had been fraudulently induced, and that simply referred, in
     dictum and without discussion, to other types of invalid contracts, including contracts
21   involving minors.  *Id.* at 1140.  *Three Valleys* did not involve disaffirmance by a
22   minor, which, unlike fraudulent inducement, challenges the validity of a contract based
23   on the capacity of one of the parties to form the contract and renders the contract *void*
     *ab initio. See Doe v. Roblox Corp.*, 602 F. Supp.3d 1243, 1256-57 (N.D. Cal. 2022)
24   1256-57 (10 year-old child lacks capacity to consent to online terms of use).  And, in
25   relegating to an arbitrator the "enforceability" of a disaffirmed agreement, the *N.A.*
26   court further disregarded California case law holding that a minor's disaffirmance of
     a contract renders the agreement's "delegation" provision *void ab initio. See J.R. v.*
27   *Electronic Arts, Inc.*, 98 Cal.App.5th at 1114-16 (minor's disaffirmance negates the
     delegation clause along with the rest of the contract).  Equally important, *Suski* makes
28

17

Finally, as a practical matter, given the undisputed law establishing the minor Plaintiffs' right to disaffirm the EULA, delegation to an arbitrator of the validity of the EULA in as to Plaintiffs could only result in an order from the arbitrator denying arbitration and would serve no purpose other than delay. *See, e.g., United Teachers of L.A. v. L.A. Unified School Dist.*, 54 Cal.4th 504, 520 (2012) (where Education Code established that arbitrator could not lawfully grant any form of relief, court should deny motion to compel arbitration).

## III. PLAINTIFF E.V.A. IS NOT BOUND BY HER PARENT'S AGREEMENT TO THE 2019 EULA.

Stephanie Allen, mother and guardian of E.V.A., has submitted a Declaration attesting that E.V.A. used an Epic accounts created by Ms. Allen to play Fortnite. Declaration of Stephanie Allen, at ¶ 3.[13] E.V.A. is, thus, a non-signatory to the 2019 EULA and is not bound by the 2019 EULA's arbitration (or other) provisions.

*B.F. v. Amazon.com Inc.*, 858 Fed. App'x. at 220-22, is directly on point. There, Amazon argued that the minor plaintiffs were bound by arbitration agreements contained in user agreements entered into by their parents. *Id.* at 220. Relying on Washington State law, the Ninth Circuit held that as non-signatories, the minor plaintiffs were not bound by their parents' agreement to arbitrate. *Id.* at 220-21, citing *Townsend v. Quadrant Corp.*, 268 P.3d 917, 924 (Wash. 2012) (en banc). California

---

it clear that delegation provisions are subject to the same threshold determination as every other part of an arbitration agreement – *i.e.*, the parties must be found, *by a court*, to have consented to the relevant delegation provision. *Suski*, 144 S. Ct. at 1194 (a "federal court *must* consider the [validity] challenge before ordering compliance with that arbitration agreement" [emphasis in original]).

[13] Epic's declarant, Shaw, has incorrectly suggested that Ms. Allen's other child, M.A., did not create his own Epic account. There is no evidence to support that suggestion. As shown elsewhere, the Court should apply summary judgment standards in assessing Epic's motion, *see Geoffrey*, 484 F. Supp.2d at 1119.

18

law is in accord. *In re Ring LLC Privacy Litig.*, 2021 WL 2621197, at *7 (California law: minor plaintiffs are not bound by arbitration provision in contracts to which they are not signatories unless such contracts are for "necessities," such as medical services and education).

## IV.    CLASS MEMBERS WHO STOPPED USING FORTNITE PRIOR TO MARCH 15, 2019 OR ASSERT CLAIMS BASED ON EPIC'S CONDUCT PRE-DATING MARCH 15, 2019, MUST BE EXCLUDED FROM ANY ORDER COMPELLING ARBITRATION.

Even if the Court (incorrectly, in Plaintiffs' view) were to order arbitration of some of the claims of some of the members of the Classes, it should exclude from any such order  all class members who (1) opened an Epic account after July 21, 2017, and stopped using Fortnite prior to March 15, 2019, or (2) assert claims based, in whole or in part, on Epic's conduct pre-dating March 15, 2019.

As shown above, Epic admits that – prior to March 15, 2019 – its EULA did not contain an arbitration provision.   Shaw Dec. ¶¶ 4-9.   On that date, Epic supposedly "updated the EULA" to include the arbitration provision set forth above. *Id.* ¶ 5. Since the Class Period in this action runs from July 21, 2017 through February 20, 2023, Complaint ¶ 1, it is apparent that class members who established Epic accounts between July 21, 2017 and March 14, 2019, and stopped using those accounts during that same period did not agree to arbitrate any disputes with Epic under the amended EULA, and cannot be compelled to arbitrate their claims in this action.  Accordingly, any order compelling arbitration should exclude all persons who opened an Epic account after July 21, 2017, stopped using it prior to March 15, 2019, and, therefore, never accepted the amended EULA or its arbitration provisions.

Moreover, Epic does not offer any legal or factual basis upon which the EULA's March 15, 2019 arbitration provision could be found to apply retroactively to disputes based on conduct pre-dating March 15, 2019, even for players who chose

to continue to play Fortnite after March 15, 2019. The language of the amended 2019 EULA's arbitration provision is set in the present tense (*e.g.*, "You and Epic agree to resolve disputes in binding individual arbitration and give up the right to go to court"),[14] which suggests it is limited to prospective application. *See Morse v. Service Master Global Hldgs., Inc*, No. CV-10-00628-SI, 2012 WL 4755035, at *5 (N.D. Cal. Oct. 4, 2012) (denying motion to compel arbitration of claims pre-dating the arbitration agreement because the "arbitration language is not retroactive on its face"); *Mohebbi v. Khazen*, No. 13-CV-03044-BLF, 2014 WL 6845477 (N.D. Cal. Dec. 4, 2014) ("Because the arbitration clause does not explicitly encompass claims that predate the signing of the [agreement], Plaintiff's false advertising claims are not arbitrable"); *see also Carr v. United States*, 560 U.S. 438, 449 (2010) ("a statute's 'undeviating use of the present tense' [is] a striking indic[ator] of its 'prospective orientation'").

## V.    EPIC'S MOTION TO TRANSFER IS BASED ON A DISAFFIRMED OR INAPPLICABLE CONTRACT PROVISION AND MUST BE DENIED.

### A.    The 2019 EULA's Forum Selection Provision Is *Void Ab Initio* Because the Minor Plaintiffs Have Disaffirmed the 2019 EULA or, in the Case of E.V.A. Is Not a Signatory to the 2019 EULA and Is Not Bound by It.

Epic also moves, in the alternative, for the Court to transfer this action, pursuant to 28 U.S.C. § 1404(a), to state or federal court in North Carolina if any of Plaintiffs' claims are found to be non-arbitrable. At the outset, Epic makes it clear in its Notice of Motion that it bases its transfer request solely on the 2019 EULA's forum-selection agreement. Epic states that "the same contract to which all the Plaintiffs agreed [*i.e.*, the EULA] requires any non-arbitrable disputes to be heard exclusively in the state or federal courts located in Wake County, North Carolina," and invokes "the truncated

---

[14]  Shaw Dec. ¶ 5 & Exhibit A, p. 1; *see also id.* Exhibit A, ¶ 12.3.1.

1    analysis required by *Atlantic Marine Construction Co. v. U.S. District Court*, 571

2    U.S. 49 (2013), when forum selection is set by contract." *See* Epic's Notice of

3    Motion, p. 2.[15]

4        Epic, thus, does not claim that this District is an "improper" or inconvenient

5    venue for this action, and has not moved to transfer, as it would be required to do to

6    pursue that contention, under Fed. R. Civ. P. 12(b)(3); *see Atlantic Marine*, 571 U.S.

7    at 60; or for transfer on grounds of *forum non conveniens* pursuant to 28 U.S.C.

8    1404(a).[16]

9        As to the "truncated" *Atlantic Marine* analysis, Epic fails to note the Supreme

10    Court's specific reservation that it "presupposes a contractually valid forum-selection

11    clause." *Id.* at 62, n. 5. And, as shown above, there is no such contractually valid

12    clause, because the minor Plaintiffs in this action have either disaffirmed the 2019

13    EULA – including its forum-selection clause – or, in the case of E.V.A., is not subject

14    to it. As a result, the EULA's forum-selection provision is no more effective than its

15    arbitration agreement. *See Doe v. Epic Games*, 435 F. Supp.3d at 1040, n.11 (court

16

17    ---

18    [15] In *Atlantic Marine*, the Supreme Court held that – where there is a valid forum-selection provision in a contract – the analysis that courts ordinarily apply to assess the appropriateness of transfer is truncated by eliminating from consideration (1) the plaintiff's choice of forum, and (2) the parties' private interests in one forum vs. another, since those factors have already been taken into account by the parties in their bargained-for contractual choice of forum. 571 U.S. at 62-64. Accordingly, where there is a valid forum-selection provision, the courts should only consider "public-interest" factors, which the court identified as including "the administrative difficulties flowing from court congestion; the local interest in having the trial of a diversity case in a forum that is at home with the law." *Id.* at 62, n.6.

25    [16] Indeed, Epic has waived any argument that venue is "improper" by its failure to move to dismiss for want of personal jurisdiction, *see Doe v. Epic Games*, 435 F. Supp.3d at 1038-39, and, in any event, "a substantial part of the events" at issue in this case took place in this venue, as required by 28 U.S.C. § 1391(b)(2). That is alleged in the Complaint (¶ 22), and is supported by Plaintiffs' declarations.

need not consider the EULA's forum selection clause because of plaintiff's disaffirmance); *Deck*, 2011 WL 7775067, at *6-7 (forum selection provision unenforceable due to minor's disaffirmation of contract); *R.A. v. Epic Games*, 2019 WL 6792801, at *7 (disaffirmance of EULA means "there is no forum-selection clause" to modify the traditional analysis on a motion to transfer).

**B.     Class Members Who Stopped Using Fortnite Prior to March 15, 2019 Are Not Subject to the EULA's Forum-Selection Provision.**

As discussed above, Epic's sole ground for its motion for transfer is the forum-selection provision in the 2019 EULA. Class members who stopped using Fortnite prior to March 15, 2019 never agreed to that provision, and there is no legal basis to enforce that provision against them.

## CONCLUSION

For the reasons stated above, the Court should deny both Epic's Motion to Compel and its alternative Motion to Transfer in their entirety.

Respectfully submitted,

*/s/ Ian W. Sloss*
Ian W. Sloss (*pro hac vice*)
SILVER GOLUB & TEITELL LLP
One Landmark Square, 15th Floor
Stamford, CT 06901
Telephone: (203) 325-4491
Fax: (203) 325-3769
isloss@sgtlaw.com

Patrick Carey (Bar No. 30862)
Mark Todzo (Bar No. 168389)
LEXINGTON LAW GROUP, LLP
503 Divisadero Street
San Francisco, California 94105
Telephone: (415) 913-7800
pcarey@lexlawgroup.com
mtodzo@lexlawgroup.com

23