UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| S.T.G., S.B.G., and S.J.G., minors, by and through their guardian SAMUEL GARCIA; I.H. and E.H., minors, by and through their guardian ARNOLD HERNANDEZ; and M.A. and E.V.A., minors, by and through their guardian STEPHANIE ALLEN; individually and on behalf of all others similarly situated;<br><br>         Plaintiffs,<br><br>v.<br><br>EPIC GAMES, INC.,<br><br>         Defendant. | Case No.: 24-cv-517-RSH-AHG<br><br>**ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO COMPEL ARBITRATION; AND (2) DENYING DEFENDANT'S MOTION TO FILE SUPPLEMENTAL AUTHORITY**<br><br>[ECF Nos. 12, 15] |

  Before the Court is a motion to compel arbitration or in the alternative to transfer venue, filed by defendant Epic Games, Inc, ECF No. 12, as well as Defendant's motion for leave to file supplemental authority, ECF No. 15. Pursuant to Civil Local Rule 7.1(d)(1), the Court finds the motions appropriate for resolution without oral argument. As set forth below, the Court grants in part and denies in part Defendant's motion to compel, and denies as moot Defendant's motion for leave to file supplemental authority.

1

## I. BACKGROUND

Plaintiffs filed this putative class action on March 18, 2024, against the maker of the popular videogame Fortnite. ECF No. 1. Plaintiffs are seven minors who played Fortnite while under the age of 13, who claim that without their parents' consent, the videogame unlawfully collected sensitive data protected under the Children's Online Privacy Protection Act ("COPPA"), 15 U.S.C. §§ 6501-6506, which Defendant exploited for commercial gain. *Id.* at ¶¶ 11-12. Plaintiffs are suing through their guardians ad litem. Although COPPA itself does not provide a private right of action, Plaintiffs bring state law claims for violation of privacy, unfair competition, and unjust enrichment based on Defendant's conduct that is alleged to violate COPPA. *Id.* at ¶¶ 1, 52. The Complaint does not specify when Plaintiffs played Fortnite, but asserts that they bring their claims "on behalf of themselves and all similarly situated children under the age of 13 who have been injured by Defendant's conduct from July 21, 2017 through February 20, 2023 (the 'Class Period')." *Id.* at ¶ 1.

On May 20, 2024, Defendant filed this motion to compel arbitration. ECF No. 12. The motion has been fully briefed. ECF Nos. 13, 14. Thereafter, Defendant filed a motion for leave to file supplemental authority, which Plaintiffs oppose. ECF Nos. 15, 17.

Defendant's motion to compel is based on an arbitration provision in the End User License Agreement ("EULA") that a user must accept to download Fortnite after first creating an Epic Games account. ECF No. 12 at 2. Since March 15, 2019, the EULA has required Fortnite users to arbitrate their disputes with Defendant. ECF No. 12-2 at ¶ 5. New and existing Epic Games account holders who accessed Fortnite for the first time after March 15, 2019, would see a scroll box displaying the EULA, with an all-bolded, all-capitalized statement that the EULA contains a binding arbitration agreement, and that the user has a time-limited right to opt out. *Id.* In order to play Fortnite, the user must click inside a box confirming that the user has read and agrees with the EULA, and then must click an "Accept" button. *Id.* at ¶ 3.

The EULA requires "Disputes" to be "settled by binding individual arbitration conducted by Judicial Arbitration and Mediation Services, Inc. ('JAMS') subject to the U.S. Federal Arbitration Act and federal arbitration law and according to the JAMS Streamlined Rules and Procedures effective July 1, 2014 (the 'JAMS Rules') as modified by [the EULA]." ECF No. 12-2 at Ex. A § 12.3. The term "Disputes" is defined to include "any dispute, claim, or controversy . . . between You and Epic that relates to your use or attempted use of Epic's products or services and Epic's products and services generally, including with limitation the validity, enforceability, or scope of this Binding Individual Arbitration section." *Id.* at Ex. A § 12.3.1. The EULA also tells users that they "have the right to opt out of and not be bound by" the arbitration agreement, provided the user exercises that right "within 30 days of the date on which you first accepted this Agreement." *Id.* at Ex. A § 12.6.

The EULA further states that in order to agree to it, "you must be an adult" and "you affirm that you have reached the legal age of majority [and] understand and accept this Agreement (including its dispute resolution terms)." *Id.* at § 3. The EULA also states "[i]f you are under the legal age of majority, your parent or legal guardian must consent to this Agreement." *Id.* The EULA provides that upon acceptance, "you are legally and financially responsible for all actions using or accessing our software, including the actions of anyone you allow to access your account." *Id.*

Defendant states that Plaintiffs have declined to identify the Epic Games accounts that they used, but that Defendant has identified accounts that appear to be associated with Plaintiffs. ECF No. 12 at 5-6. Each of these accounts accepted the EULA. ECF No. 12-2 at ¶¶ 10-18. Defendant asserts that each of the Plaintiffs is therefore bound by the arbitration agreement contained in the EULA, including the provision requiring users to arbitrate disputes about the "validity, enforceability, or scope" of the arbitration agreement itself, a so-called "delegation clause" that delegates to the arbitrator the ability to determine questions of arbitrability. ECF No. 12 at 12.

Plaintiffs assert that six of the seven plaintiffs became parties to the EULA through their respective Epic Games accounts, but subsequently disaffirmed the EULA, ECF No. 13 at 10-12; and that the remaining plaintiff (E.V.A.) was never a party to the EULA because she used an Epic Games account created by her mother, rather than creating her own account, *id.* at 18-19.

## II. LEGAL STANDARD

### A. Motion to Compel Arbitration

The Federal Arbitration Act ("FAA") governs arbitration agreements. 9 U.S.C. § 2. The FAA "was enacted . . . in response to widespread judicial hostility to arbitration agreements." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). It "reflect[s] both a 'liberal federal policy favoring arbitration,' and the 'fundamental principle that arbitration is a matter of contract[.]'" *Id.* (citations omitted) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); and then quoting *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010)). The FAA provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract[.]" 9 U.S.C. § 2. The FAA "requires courts rigorously to enforce arbitration agreements according to their terms, including terms that specify with whom the parties choose to arbitrate their disputes and the rules under which that arbitration will be conducted." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 506 (2018) (citations omitted).

Under the FAA, a party may seek a court order compelling arbitration where another party refuses to arbitrate. 9 U.S.C. § 4. A federal court "must compel arbitration if (1) a valid agreement to arbitrate exists and (2) the dispute falls within the scope of that agreement." *Geier v. m-Qube Inc.*, 824 F.3d 797, 799 (9th Cir. 2016). Because "[a]rbitration is a product of contract," a court applies ordinary state law principles to

determine whether a valid contract to arbitrate exists. *Davis v. Nordstrom, Inc.*, 755 F.3d 1089, 1092-93 (9th Cir. 2014).

The party seeking to compel arbitration bears the burden of proving by a preponderance of the evidence the existence of an agreement to arbitrate. *See Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015) (citing *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008)). "[T]he party resisting arbitration bears the burden[] of proving that the claims at issue are unsuitable for arbitration." *Munro v. Univ. of S. Cal.*, 896 F.3d 1088, 1091 (9th Cir. 2018) (citing *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000)). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Simula v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999) (citing *Moses H. Cone*, 460 U.S. at 24-25). In resolving a motion to compel arbitration, "[t]he summary judgment standard [of Federal Rule of Civil Procedure 56] is appropriate because the district court's order compelling arbitration 'is in effect a summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate.'" *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021) (quoting *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 n.9 (3d Cir. 1980)).

The court, "upon being satisfied that the issue involved . . . is referable to arbitration, . . . shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ." 9 U.S.C. § 3.

**B.     Disputes About Arbitrability**

"In general, courts may resolve challenges directed specifically to the validity of the arbitration provision itself." *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1029 (9th Cir. 2022). However, the presence of a "delegation clause" – that is, "a clause within an arbitration provision that delegates to the arbitrator gateway questions of arbitrability" – serves to "limit[] the issues that a court may decide." *Id.*; *see First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) ("Just as the arbitrability of the merits of a dispute

5

depends upon whether the parties agreed to arbitrate that dispute, so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about that matter." (emphasis and citations omitted)). Delegation of arbitrability deprives a court of authority to decide whether the arbitration agreement applies to a particular dispute. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019) ("When the parties' contract delegates the arbitrability question to an arbitrator, . . . a court possesses no power to decide the arbitrability issue. That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless."); *cf. Meeks v. Experian Info. Servs., Inc.*, No. 21-17023, 2022 WL 17958634, at *2 n.3 (9th Cir. Dec. 27, 2022) ("We do not address the plaintiffs' argument that Experian cannot enforce the provision because the dispute does not arise out of the agreement. The agreement delegates issues of scope to the arbitrator to decide." (citing *Henry Schein*, 586 U.S. at 67)). A delegation clause is "essentially a mini-arbitration agreement, nested within a larger one." *Caremark*, 43 F.4th at 1029; *accord Holley-Gallegly v. TA Operating LLC*, 74 F.4th 997, 1001 (9th Cir. 2023).

To enforce a delegation clause, a movant must show that the parties "clearly and unmistakably" intended to delegate the question of arbitrability to the arbitrator. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)) (holding arbitrability is "an issue for judicial determination unless the parties clearly and unmistakably provide otherwise."). If a delegation clause is clear and unmistakable, "then even arbitrability challenges based on the unconscionability of the arbitration agreement as a whole must be decided by the arbitrator." *NewcombeDierl v. Amgen*, No. 22-cv-2155, 2022 WL 3012211, at *3 (C.D. Cal. May 26, 2022) (citing *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 72 (2010)); *cf. Jackson v. Airbnb, Inc.*, No. 22-cv-3084, 2022 WL 16752071, at *3 (C.D. Cal. Nov. 4, 2022) ("Where an arbitration agreement clearly delegates the question of arbitrability to

the arbitrator there is no exception that allows the Court to address questions of arbitrability." (citing *Henry Schein*, 586 U.S. at 65)).

### III. ANALYSIS

Two disputes are central to resolving this motion. First, for the six of seven plaintiffs who were parties to the EULA, and who contend that they subsequently disaffirmed the EULA and its arbitration agreement, the Parties dispute whether the EULA's "delegation clause" requires the issue of disaffirmance to be heard in the first instance by the Court or by an arbitrator. Second, the Parties dispute whether the seventh plaintiff, E.V.A., can be bound by the arbitration agreement contained in the EULA where E.V.A.'s mother, and not E.V.A., created an Epic Games account and agreed to the terms of the EULA. The Court addresses these issues in turn.

#### A. Compelling Arbitration as to Plaintiffs Who Disaffirmed the EULA

California Family Code section 6700 states that "a minor may make a contract in the same manner as an adult, subject to the power of disaffirmance" set forth in Family Code section 6710. Cal. Fam. Code § 6700.[1] Section 6710 states: "Except as otherwise provided by statute, a contract of a minor may be disaffirmed by the minor before majority or within a reasonable time afterwards …." Cal. Fam. Code § 6710. Under California law, "[n]o specific language is required to communicate an intent to disaffirm. A contract (or conveyance) of a minor may be avoided by any act or declaration disclosing an unequivocal intent to repudiate its binding force and effect." *Berg v. Traylor*, 148 Cal. App. 4th 809,

---

[1] Plaintiffs argue that California law governs the disaffirmance defense raised here, ECF No. 13 at 9, and adds, "there is no conflict between the laws of California, Washington and North Carolina with respect to the power to disaffirm, and, absent a conflict, no choice of law analysis is required, and the law of the forum applies," *id.* at 10 (citing *Knapke v. PeopleConnect, Inc.*, 38 F.4th 824, 832 (9th Cir. 2022) ("Absent [an actual conflict], the forum may apply its own law.")). Defendant does not disagree.

820 (Ct. App. 2007) (citation omitted). The filing of a lawsuit may constitute an act of disaffirmance. *Coughenour v. Del Taco, LLC*, 57 Cal. App. 5th 740, 748 (Ct. App. 2020).

Here, the Parties do not dispute that all seven Plaintiffs are minors. Plaintiffs contend that they disaffirmed the EULA by filing this lawsuit, and three of the seven have submitted declarations stating that he or she disaffirmed the EULA "in its entirety." ECF No. 13 at 12; ECF No. 13-2 at ¶ 10 (declaration of S.B.G.); ECF No. 13-3 at ¶ 9 (declaration of S.J.G.); ECF No. 13-4 at ¶ 10 (declaration of S.T.G.). Defendant responds that under the delegation clause contained in the EULA, disaffirmance is a question for the arbitrator rather than the Court.

Two Supreme Court decisions frame the question, in the context of an arbitration agreement containing a delegation clause, of which issues regarding arbitrability are for the courts and which are for an arbitrator. First, in *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010), the Supreme Court held that unless the plaintiff "challenged the delegation provision *specifically*, we must treat it as valid under § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement *as a whole* for the arbitrator." *Id.* at 72 (emphasis added). In making the distinction between challenges "specific" to a provision, and those applicable to the agreement "as a whole," the Court explained that the latter category includes challenges "on a ground that directly affects the entire agreement (e.g., the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." *Id.* at 70 (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006)). The Court concluded that the plaintiff's unconscionability argument was properly considered a challenge to the arbitration agreement "as a whole" rather than as a challenge "specific" to the delegation clause. *Id.* at 73-74.[2]

---

[2] In order to further illustrate the distinction, the Court gave examples of how the plaintiff's arguments fell short of being specifically directed to the delegation clause—and

8

Second, just days after *Rent-A-Center*, the Supreme Court decided *Granite Rock Co. v. International Brotherhood of Teamsters*, 561 U.S. 287 (2010), addressing a question not presented in *Rent-A-Center*, whether challenges to contract formation (rather than challenges to contract validity) are subject to delegation. The Court held that the issues reserved to the courts "always include" whether an arbitration agreement was formed. *Granite Rock*, 561 U.S. at 297.

---

provided examples of different arguments, not made by the plaintiff (Jackson), that might have required determination by a court. These examples reflect that whether a challenge is specifically directed to a delegation clause depends on the substance of the challenge, not merely how the plaintiff chooses to label it:

> Jackson's other two substantive unconscionability arguments assailed arbitration procedures called for by the contract—the fee-splitting arrangement and the limitations on discovery—procedures that were to be used during arbitration under both the agreement to arbitrate employment-related disputes and the delegation provision. It may be that had Jackson challenged the delegation provision by arguing that these common procedures as applied to the delegation provision rendered that provision unconscionable, the challenge should have been considered by the court. To make such a claim based on the discovery procedures, Jackson would have had to argue that the limitation upon the number of depositions causes the arbitration of his claim that the Agreement is unenforceable to be unconscionable. That would be, of course, a much more difficult argument to sustain than the argument that the same limitation renders arbitration of his factbound employment-discrimination claim unconscionable. Likewise, the unfairness of the fee-splitting arrangement may be more difficult to establish for the arbitration of enforceability than for arbitration of more complex and fact-related aspects of the alleged employment discrimination. Jackson, however, did not make any arguments specific to the delegation provision; he argued that the fee-sharing and discovery procedures rendered the entire Agreement invalid.

*Id.* at 74.

In light of these two decisions, the Ninth Circuit has synthesized Supreme Court caselaw as follows:

> First, a court must resolve any challenge that an agreement to arbitrate was never formed, even in the presence of a delegation clause. Next, a court must also resolve any challenge directed specifically to the enforceability of the delegation clause before compelling arbitration of any remaining gateway issues of arbitrability. Finally, if the parties did form an agreement to arbitrate containing an enforceable delegation clause, all arguments going to the scope or enforceability of the arbitration provision are for the arbitrator to decide in the first instance.

*Caremark*, 43 F.4th at 1030.

Using this framework, the Court first addresses whether Plaintiffs' disaffirmance defense is a "challenge that an agreement to arbitrate was never formed." *Caremark*, 43 F.4th at 1030. The Court concludes that it is not. Plaintiffs do not argue that disaffirmance means they never entered into the EULA; instead, their position is that after this lawsuit was filed, the EULA became "void ab initio" and a "nullity." ECF No. 13 at 17.

Second, the Court addresses whether the disaffirmance defense is "directed specifically to the enforceability of the delegation clause." *Caremark*, 43 F.4th at 1030. Here as well, the Court concludes that it is not. Plaintiff's disaffirmance defense is based on two theories: (1) for all Plaintiffs except E.V.A., based on filing of this lawsuit; and (2) for plaintiffs S.B.G., S.T.G., and S.J.G., additionally, based on their sworn declarations disaffirming the EULA in its entirety. Neither the Complaint nor the declarations mention the delegation clause, let alone specifically challenge its enforceability. Plaintiffs' disaffirmance defense is, in the language used as well as in substance, a challenge to the EULA as a whole rather than a challenge specific to the delegation clause. ECF No. 13 at 12-13 ("*[T]he 2019 EULA*, upon which Epic relies for all aspects of its Motion, is disaffirmed and void ab initio ….") (emphasis added). It is "a ground that directly affects

the entire agreement (e.g., the agreement was fraudulently induced)." *Rent-A-Center*, 561 U.S. at 70.[3]

The Ninth Circuit has not specifically addressed whether, in a case involving a delegation clause, a minor's disaffirmance defense is a question for the court or for the arbitrator. But other U.S. Courts of Appeals have concluded that such a defense is subject to an arbitrator's determination.

In *K.F.C. v. Snap Inc.*, 29 F.4th 835 (7th Cir. 2022), the Seventh Circuit determined that a minor's disaffirmance defense was for the arbitrator to resolve. *Id.* at 837-38. The Seventh Circuit determined that under both California and Illinois law, contracts entered into by children are voidable; but that does not mean "that they must be ignored, no matter what." *Id.* at 837. Instead, such contracts may be ratified. *Id.* The court held that "[a]s long as state law permits a child to ratify a contract, youth must be a defense rather than an obstacle to a contract's formation, and as a defense it goes to the arbitrator." *Id.* at 838.

The preceding year, in *I.C. v. StockX, LLC*, 19 F.4th 873 (6th Cir. 2021), the Sixth Circuit concluded that the plaintiffs' infancy defense under Michigan law was not an argument that a contract was never formed:

---

[3]  The Ninth Circuit's decision in *Caremark* provides two more examples of such challenges to the "contract as a whole" that are referrable to the arbitrator. In that case, the Chickasaw Nation, a sovereign and federally recognized Indian tribe, brought a lawsuit against Caremark, its pharmacy benefit manager, alleging violations of a provision of the Indian Health Care Improvement Act. *Id.* at 1027. The Chickasaw Nation had signed provider agreements with Caremark incorporating an arbitration agreement with a delegation clause. *Id.* at 1025-26. The Ninth Circuit affirmed the district court's order compelling arbitration, holding that the Chickasaw Nation's defenses to arbitrability—including sovereign immunity, and an argument that another provision of the Indian Health Care Improvement Act precluded the Nation from being compelled to arbitrate at all—were matters for the arbitrator to decide in the first instance. *Id.* at 1034 ("[T]he Nation's argument here does not call into question the district court's authority to enforce the delegation clause—rather, it challenges the enforceability of the arbitration provision as a whole.").

11

> Here, plaintiffs' infancy argument does not concern the formation or existence of a contract. It makes no difference whether infancy under state law renders a contract void or voidable. … Instead, the relevant inquiry is whether the minor plaintiffs' infancy defense amounts to an argument that the agreement "was [n]ever concluded."

*Id.* at 883 (quoting *Granite Rock*, 561 U.S. at 301). The Sixth Circuit also determined that the infancy defense was directed to the contract as a whole, rather than being specific to the delegation clause. *Id.* at 884-86. The plaintiffs in that case argued that "the infancy doctrine is applicable to the contract as a whole; but it is also applicable to each arbitration clause and delegation clause when viewed separately." *Id.* at 884-85. After analyzing at length the Supreme Court's decision in *Rent-A-Center*, the Sixth Circuit concluded as follows:

> [C]ontrary to plaintiffs' view, the requirement that a litigant must "specifically" challenge the delegation provision is not a mere pleading requirement. …. [A] party's mere statement that it is challenging the delegation provision is not enough; courts must look to the substance of the challenge. Here, plaintiffs' infancy defense affects the validity or enforceability of "the whole contract," as well as the agreement to arbitrate and its delegation provision, which are "part of that contract." *See Rent-A-Center*, 561 U.S. at 71. As such, plaintiffs were required to show that "the basis of [their] challenge [is] directed specifically" to the "delegation provision." *Id.* at 71-72 (emphasis added). They have failed to do so as they have simply recycled the same arguments that pertain to the enforceability of the agreement as a whole. Therefore, plaintiffs' infancy defense is for an arbitrator to decide.

*I.C.*, 19 F.4th at 885-86.

The Court is also persuaded by district courts that have employed similar reasoning. *See N.A. v. Nintendo of Am.*, No. 23-cv-2424, 2023 WL 8587628, at *5 (N.D. Cal. Dec. 11, 2023) ("In sum, N.A. does not argue that the contract to arbitrate was not formed. He asserts that it is voidable because N.A. was a minor when he entered into it. Through that contract, N.A. and Nintendo agreed to arbitrate issues of enforceability, which includes N.A.'s

12

disaffirmation defense. Therefore, the question of disaffirmation must be decided in arbitration."); *A.C. v. Nintendo of Am.*, No. C20-1694, 2021 WL 1840835, at *2 (W.D. Wash. Apr. 29, 2021) ("Minors … have the capacity to enter into contracts subject to disaffirmance under both California and Washington law. … A.C. contends that even if the parties formed an agreement to arbitrate, that agreement is not valid because he now disaffirms it. The Court does not reach this issue, however, because, as it does not relate to contract formation, the Court determines that the parties agreed to have an arbitrator decide it.").

In opposing arbitration, Plaintiffs rely on language in the Supreme Court's recent decision in *Coinbase v. Suski*, 144 S. Ct. 1186 (2024). But *Coinbase* does not support Plaintiffs' position. In *Coinbase*, the parties executed two contracts: the first containing an arbitration provision with a delegation clause, and the second containing a forum selection clause providing that all disputes related to that contract be decided in California courts. *Id.* at 1190-91. The defendant argued the first contract's delegation clause "established the terms by which all subsequent disputes were to be resolved[.]" *Id.* at 1191. The plaintiffs maintained—and the Ninth Circuit held—that "the second contract's forum selection clause superseded that prior agreement." *Id.* The Supreme Court "granted certiorari to answer the question of who—a judge or an arbitrator—should decide whether a subsequent contract supersedes an earlier arbitration agreement that contains a delegation clause." *Id.* at 1192. In answering this question, *Coinbase* held that "a court, not an arbitrator, must decide whether the parties' first agreement was superseded by their second." *Id.* at 1195.

The *Coinbase* decision is a narrow one. It holds only that where "parties have agreed to two contracts—one sending arbitrability disputes to arbitration, and the other either explicitly or implicitly sending arbitrability disputes to the courts—a court must decide which contract governs." *Id.* at 1194. Here, Plaintiffs rely on the following passage in *Coinbase*:

> [W]here a challenge applies "equally" to the whole contract and to an arbitration or delegation provision, a court must address that challenge. *Rent-A-Center*, 561 U.S. at 71. Again, basic principles of contract and consent require that result. Arbitration and delegation agreements are simply contracts, and, normally, if a party says that a contract is invalid, the court must address that argument before deciding the merits of the contract dispute. So too here. "If a party challenges the validity ... of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with that [arbitration] agreement." *Id.* (emphasis added).

144 S. Ct. at 1194; *see also* ECF No. 13 at 17. But this passage merely quotes and reiterates the holding of *Rent-A-Center*, without purporting to modify the earlier decision. The first sentence in the passage above quotes the following statement from *Rent-A-Center*: "[W]here the alleged fraud that induced the whole contract *equally* induced the agreement to arbitrate which was part of that contract—we nonetheless require the basis of challenge *to be directed specifically to the agreement to arbitrate* before the court will intervene." *Rent-A-Center*, 561 U.S. at 71 (emphasis added). Applying that standard here results in referring Plaintiffs' disaffirmance defense to the arbitrator, because Plaintiffs' disaffirmance defense is not directed specifically to the delegation clause.

Plaintiffs also rely on a recent decision of the California Court of Appeal, *J.R. v. Electronic Arts Inc.*, 98 Cal. App. 5th 1107 (Ct. App. 2024), affirming a trial court's denial of a motion to compel arbitration of the plaintiff's disaffirmance defense. In that case, the minor plaintiff filed a declaration stating that he "disaffirm[s] the entirety of any … contract or agreement that was accepted through my EA account." *Id.* at 1112. The defendant videogame company argued that the plaintiff's disaffirmation did not specifically encompass the delegation clause and was therefore not effective to disaffirm that clause. *Id.* at 1113. The Court of Appeal disagreed. Relying on the dictionary definition of the term "any," the court determined that the plaintiff's declaration by its terms included disaffirmation of the delegation clause. *Id.* at 1116. The court concluded that the plaintiff's

"disaffirmance of the delegation provision is unambiguous and unequivocal. Nothing more is required." *Id.* at 1117. The Court of Appeal also briefly addressed the defendant's argument that if the plaintiff's "disaffirmance of 'any … contract or agreement' is sufficient, then 'the severability rule laid down in *Prima Paint* and *Rent-A-Center* means nothing.'" *Id.* The court described this argument as "baseless," and stated that "if a defense does go to all three severable agreements [i.e., the user agreement, the arbitration agreement, and the delegation clause], then that defense is sufficient to defeat the delegation clause …." *Id.*

The Court acknowledges that the Court of Appeal decision in *J.R.* (declining to compel arbitration of the disaffirmance defense) appears to be in tension with the decisions of the Sixth and Seventh Circuits (compelling arbitration of the disaffirmance defense). Unlike the latter decisions, *J.R.* does not analyze the language in *Rent-A-Center* addressing the distinction between a challenge to an agreement "as a whole" and a challenge "specific" to a delegation clause; most of the *J.R.* opinion focuses instead on the language the plaintiff used in his disaffirmance (which, unlike the declarations filed by three Plaintiffs here, effected disaffirmance of "any … contract or agreement" and therefore encompassed the delegation clause in addition to the user agreement more generally). In any case, this Court does not consider *J.R.* to be binding precedent interpreting the U.S. Supreme Court's decision in *Rent-A-Center*, which in turn was interpreting Section 2 of the Federal Arbitration Act.

Plaintiffs also cite a host of district court decisions that the Court finds distinguishable because they did not address a delegation clause. *See Doe v. Epic Games*, 435 F. Supp.3d 1024, 1034-38 (N.D. Cal. 2020); *R.A. v. Epic Games*, No. CV 19-1488-GW-Ex, 2019 WL 6792801, at *4-*7 (C.D. Cal. July 30, 2019); *Y.H v. Blizzard Entertainment*, No. 8:22-cv-998-SSS-ADSx, 2022 WL 17491821, at *3 (C.D. Cal. Nov. 29, 2022), *vacated*, No. 22-56145, 2023 WL 7015280 (9th Cir. Oct. 25, 2023); *T.K. v. Adobe Systems, Inc.*, No. 17-CV04595, 2018 WL 1812200, at *4-6 (N.D. Cal. April 17,

2018); *Lopez v. Kmart Corp.*, No. 15-cv-1089-JSC, 2015 WL 2062606, at *4-5, *7 (N.D. Cal. May 4, 2015).

The Court concludes that the EULA clearly and unmistakably delegates to the arbitrator questions of the "validity, enforceability, or scope" of the EULA; and that Plaintiffs' claims as well as their disaffirmance defense fall within the scope of the EULA's arbitration agreement. Accordingly, the claims of S.T.G., S.B.G., S.J.G., I.H., E.H., and M.A. are referred to arbitration.[4]

### B.   Compelling Arbitration as to a Nonparty to the EULA

Apart from the disaffirmance question, Plaintiffs contend that E.V.A. is not bound by the arbitration provision in the EULA because she never created an Epic Games account and therefore is not a party to the EULA. ECF No. 13 at 18-19. Plaintiffs submit a declaration from E.V.A.'s mother and guardian ad litem, Stephanie Allen, who states that her child E.V.A. "has played Fortnite using an account that I set up with my email address." ECF No. 13-5 ¶ 3.

Defendant responds that it would be unfair to allow E.V.A. to avoid the arbitration agreement that her mother agreed to, where E.V.A. played—and continues to play—Fortnite on that account. ECF No. 14 at 9-11. Defendant submits a declaration with its reply brief reflecting that Ms. Allen has two Epic Games accounts, and that both accounts have had active gameplay not only since the filing of this lawsuit, but even since the filing of Defendant's motion to compel. ECF No. 14-1 ¶ 6. Defendant argues that "E.V.A.'s purposeful availment of Ms. Allen's contract precludes her from evading the contract's dispute resolution terms." ECF No. 14 at 10. Defendant does not invoke a specific doctrine for compelling E.V.A. to arbitrate, but argues, "[t]hat children are bound to contracts

---

[4]   Because the Court grants Defendant's motion to compel arbitration as to these Plaintiffs, it does not address the alternative relief that Defendant seeks of transferring venue to the Eastern District of North Carolina.

executed by their parents sometimes is decided on principles of agency and otherwise as a matter of equitable estoppel." ECF No. 14 at 8. Neither party expresses a view on which jurisdiction's law governs this question as to E.V.A., a resident of Washington; and Defendant, the moving party, does not cite controlling authority from any jurisdiction compelling arbitration of the tort claims of minors based on arbitration provisions in parents' contracts.

The Court concludes that Defendant has not at this time established an adequate basis for compelling E.V.A. to arbitrate under the EULA. Defendant relies in part on the declaration submitted with its reply brief, to which Plaintiffs have not had an opportunity to respond; and while that declaration addresses ongoing gameplay in Ms. Allen's account, it cannot ascribe that gameplay to E.V.A. The only fact in the record specific to E.V.A.'s gameplay is that E.V.A. "has played Fortnite" using an account set up by Ms. Allen. The Court acknowledges that Defendant, prior to discovery, is in possession of little information regarding when a particular minor is playing on a shared Epic Games account, much less other facts that may be relevant to doctrines of equitable estoppel or agency. Accordingly, the Court denies Defendant's motion as to plaintiff E.V.A. without prejudice to Defendant renewing such a motion based on a more complete factual record.[5]

    **C.**    **Motion for Leave to File Supplemental Authority**

Based on the disposition above, the Court denies as moot Defendant's motion for leave to file supplemental authority. In ordering S.T.G., S.B.G., S.J.G., I.H., E.H., and M.A. to proceed to arbitration, the Court does not rely on Defendant's supplemental authority. Nor would that supplemental authority, even if relied upon by the Court, warrant compelling E.V.A. to arbitrate at this time.

---

[5] For the same reasons, the Court declines to transfer E.V.A.'s case to the Eastern District of North Carolina based on a forum selection clause contained in the EULA to which E.V.A. is not a party.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to compel arbitration is **GRANTED** as to plaintiffs S.T.G., S.B.G., S.J.G., I.H., E.H., and M.A., and **DENIED WITHOUT PREJUDICE** as to plaintiff E.V.A. The Court **ORDERS** plaintiffs S.T.G., S.B.G., S.J.G., I.H., E.H., and M.A. to proceed to arbitration, and their claims—but not the claims of E.V.A.—are **STAYED** pending the completion of arbitration proceedings pursuant to 9 U.S.C. § 3. The Parties are further **ORDERED** to file a status update on their arbitration proceedings **every ninety (90) days** and **within seven (7) days of completion of arbitration**.

**IT IS SO ORDERED.**

Dated: October 2, 2024

_____
Hon. Robert S. Huie
United States District Judge