UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| S.T.G., S.B.G., and S.J.G., minors, by and through their guardian SAMUEL GARCIA; I.H. and E.H., minors, by and through their guardian ARNOLD HERNANDEZ; and M.A. and E.V.A., minors, by and through their guardian STEPHANIE ALLEN; individually and on behalf of all others similarly situated;<br><br>　　　　　　　　　　　　Plaintiffs,<br><br>　v.<br><br>EPIC GAMES, INC.,<br><br>　　　　　　　　　　　　Defendant. | Case No.: 24-cv-517-RSH-AHG<br><br>**ORDER GRANTING DEFENDANT'S RENEWED MOTION TO COMPEL ARBITRATION**<br><br>[ECF Nos. 40, 46] |

　　　Before the Court is a renewed motion to compel arbitration filed by defendant Epic Games, Inc. ECF No. 40. As set forth below, the motion is granted.

**I.　BACKGROUND**

　　　Plaintiffs filed this putative class action on March 18, 2024, against the maker of the popular video game Fortnite. ECF No. 1. Plaintiffs are seven minors who played Fortnite while under the age of 13, who claim that without their parents' consent, the videogame

1  unlawfully collected sensitive data protected under the Children's Online Privacy
2  Protection Act ("COPPA"), 15 U.S.C. §§ 6501-6506, which Defendant exploited for
3  commercial gain. *Id.* at ¶¶ 11-12. Plaintiffs are suing through their guardians ad litem.
4  Although COPPA itself does not provide a private right of action, Plaintiffs bring state law
5  claims for violation of privacy, unfair competition, and unjust enrichment based on
6  Defendant's conduct that is alleged to violate COPPA. *Id.* at ¶¶ 1, 52. The Complaint does
7  not specify when Plaintiffs played Fortnite, but asserts that they bring their claims "on
8  behalf of themselves and all similarly situated children under the age of 13 who have been
9  injured by Defendant's conduct from July 21, 2017 through February 20, 2023 (the 'Class
10 Period')." *Id.* at ¶ 1.

11        On May 20, 2024, Defendant moved to compel arbitration as to all seven minor
12 plaintiffs. ECF No. 12. The motion was based on an arbitration provision in the End User
13 License Agreement ("EULA") that a user must accept to download Fortnite after first
14 creating an Epic Games account. The arbitration provision contains, among other
15 provisions, a "delegation clause" referring to the arbitrator any disputes about the validity,
16 enforceability, or scope of the arbitration provision. ECF No. 12-2 at Ex. A § 12.3.1. In
17 opposing the motion, Plaintiffs argued that: (1) six of the seven minors, subsequent to
18 accepting the EULA containing the arbitration provision, disaffirmed that agreement; and
19 (2) the seventh minor, E.V.A., never accepted the EULA in the first place, but instead
20 played Fortnite on an account created by her mother, Ms. Allen. *See* ECF No. 13. Relying
21 on a declaration by Ms. Allen, Plaintiffs wrote, "E.V.A. is, thus, a non-signatory to the
22 2019 EULA and is not bound by the 2019 EULA's arbitration (or other) provisions." ECF
23 No. 13 at 18.

24        On October 2, 2024, the Court granted the motion to compel arbitration in part. ECF
25 No. 21. As to the six minors who had created an Epic Games account, downloaded Fortnite,
26 and accepted the EULA, the Court ruled that their claims as well as their disaffirmance
27 defense fell within the scope of the EULA's arbitration agreement. ECF No. 21 at 16. In
28

contrast, the Court declined to compel arbitration against E.V.A. as a "Nonparty to the EULA," finding that "Defendant has not at this time established an adequate basis for compelling E.V.A. to arbitration under the EULA." ECF No. 21 at 16, 17. The Court cited Ms. Allen's declaration, as well as Plaintiffs' contention that E.V.A. never created an Epic Games account and therefore was not a party to the EULA. *Id.* at 16.

Defendant took an interlocutory appeal from that portion of the Court's order denying the motion to compel as to E.V.A. ECF No. 22. This Court stayed E.V.A.'s case pending disposition of the appeal. ECF No. 26.

Contemporaneous with the appeal, four of the six other plaintiffs filed demands for arbitration. The Parties have provided the Court with periodic status updates relating to the arbitration proceedings. ECF Nos. 29, 31.[1]

On August 17, 2025, the Parties filed a joint motion for an indicative ruling pursuant to Fed. R. Civ. P. 62.1. ECF No. 32. In the joint motion, the Parties explained:

> It has now emerged that certain facts relied upon by the Court in its ruling with respect to E.V.A. were mistaken. E.V.A.'s mother Stephanie Allen had declared that E.V.A. played Epic Games' *Fortnite* video game in an account *Ms. Allen* created, and that E.V.A. did not have an account of her own. *See* Declaration of Stephanie Allen dated July 8, 2024 (Dkt. No. 13-5), ¶ 3. But Ms. Allen has subsequently learned that, in November 2021, E.V.A. created her own account to play *Fortnite* and that E.V.A.'s *Fortnite* gameplay was regularly in this account E.V.A. created.

ECF No. 32 at 2. The Parties asked this Court for a statement that, if the Ninth Circuit were to remand the case rather than hearing the present appeal, this Court would vacate its existing order denying arbitration as to E.V.A., to allow a renewed motion to compel based

---

[1] Defendant advises that "at the Parties' request, the arbitrator has paused proceedings pending this Court's determination of whether E.V.A. must also resolve her dispute in arbitration. The other two original plaintiffs … never commenced arbitrations." ECF No. 40 at 7 n.3.

on the new facts. *Id.* On August 18, 2025, this Court issued the requested order. ECF No. 33.

On August 21, 2025, the Court of Appeals remanded the case. ECF No. 34. At the Parties' request, this Court set an extended briefing schedule for a renewed motion to compel. ECF No. 37.

## II. DISCUSSION

The Court's prior order provides background on the EULA and sets forth the applicable legal standard. ECF No. 21 at 2-7. Under the analysis contained in that order, E.V.A. is identically situated, for purposes of Defendant's motion to compel, to the other six minor plaintiffs whom the Court directed to arbitration. Plaintiffs do not argue otherwise. Instead, in opposing the renewed motion to compel arbitration, they raise an argument they did not raise previously relating to contract formation. ECF No. 43 at 6. Plaintiffs do not dispute that in order to play Fortnite, E.V.A. like her co-plaintiffs was required to and did: (1) view a scroll box displaying the EULA, with an all-bolded, all-capitalized statement that the EULA contains a binding arbitration agreement, and that the user has a time-limited right to opt out; (2) click inside a box confirming that the user has read and agrees with the EULA; and (3) click an "Accept" button. *See* ECF No. 21 at 2. Plaintiffs contend, rather, that the language of the EULA itself precluded E.V.A. from accepting it.

Plaintiffs' new argument is based on the following provision of the EULA:

> TO ENTER INTO THIS LICENSE AGREEMENT, YOU MUST BE AN ADULT OF THE LEGAL AGE OF MAJORITY IN YOUR COUNTRY OF RESIDENCE. YOU ARE LEGALLY AND FINANCIALLY RESPONSIBLE FOR ALL ACTIONS USING OR ACCESSING OUR SOFTWARE, INCLUDING THE ACTIONS OF ANYONE YOU ALLOW TO ACCESS YOUR ACCOUNT, YOU AFFIRM THAT YOU HAVE REACHED THE LEGAL AGE OF MAJORITY, UNDERSTAND AND ACCEPT THIS AGREEMENT (INCLUDING ITS DISPUTE RESOLUTION TERMS). IF YOU ARE UNDER THE LEGAL AGE OF MAJORITY, YOUR PARENT OR

LEGAL GUARDIAN MUST CONSENT TO THIS AGREEMENT.

ECF No. 43 at 4; ECF No. 40-1 (EULA at Ex. A, p. 9). Plaintiffs interpret this language as expressly limiting the offer made in the EULA to adults, such that only adults—and not minors like E.V.A.—have the power to accept and be bound by the EULA. ECF No. 43 at 7-10.

In contrast, Defendant interprets this language as containing a promise by the accepting party that he or she is an adult, or has obtained consent from an adult; but Defendant asserts that, whether such a promise is truthful or not in a given situation, a minor has the power to accept the offer. ECF No. 40 at 14-15; ECF No. 45 at 3-4. Defendant argues in the alternative that E.V.A.'s mother did in fact consent to the EULA, and that in any case, the doctrine of equitable estoppel prevents E.V.A. from avoiding the arbitration provision here. ECF No. 40 at 16-18.

The Court finds it unnecessary to reach the Parties' arguments about the construction of the "age of majority" provision quoted above, and agrees with Defendant that equitable estoppel applies to require E.V.A. to arbitrate her claims here.

The Parties refer to Washington law to govern questions of whether E.V.A., a Washington resident, entered into or is bound by the EULA. Under Washington law, as a general matter, a party arguing equitable estoppel "must show '(1) an admission, statement or act inconsistent with a claim later asserted; (2) reasonable reliance on that admission, statement, or act by the other party; and (3) injury to the relying party if the court permits the first party to contradict or repudiate the admission, statement, or act.'" *Copper Leav, LLC v. Ace Paving Co.*, 553 P.3d 111, 126 (Wash. Ct. App. 2024) (quoting *Dep't of Ecology v. Theodoratus*, 957 P.2d 1241, 1249 (Wash. 1998)). Equitable estoppel must be established by clear, cogent, and convincing evidence. *Reser v. Pollution Control Hearings Bd.*, 541 P.3d 992, 1000 (Wash. Ct. App. 2023). In the context of a dispute over whether parties to a lawsuit are bound by an arbitration agreement, "[e]quitable estoppel 'precludes

a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes.'" *David Terry Invs., LLC-PRC v. Headwaters Dev. Grp. LLC*, 463 P.3d 117, 123 (Wash Ct. App. 2020) (quoting *Townsend v. Quadrant Corp.*, 268 P.3d 917, 922 (2012) (lead opinion)).[2] Thus, "[u]nder principles of equitable estoppel … a party who knowingly exploits a contract for benefit cannot simultaneously avoid the burden of arbitrating." *Townsend*, 268 P.3d at 923 (majority opinion) (citing *Satomi Owners Ass'n v. Satomi, LLC*, 225 P.3d 213, 230 n.22 (Wash. 2009)).

The Ninth Circuit has held, in an unpublished opinion applying the Washington Supreme Court's majority opinion in *Townsend*, that "a non-signatory does not knowingly exploit the contract when they bring claims that 'do not arise out of the contract'—that is, when the non-signatory brings claims that 'sound in tort and allege personal injuries." *B.F.*, 858 F. App'x at 220 (quoting *Townsend*, 268 P.3d at 924 (majority opinion). Plaintiffs argue that *Townsend* and *B.F.* are "dispositive of Epic's equitable estoppel argument," because E.V.A.'s claims in this lawsuit sound in tort and allege personal injuries, rather than arising from the contract. ECF No. 43 at 13-14. Plaintiffs assert, "because E.V.A.'s claims do not seek to enforce Epic's obligations under the EULA, equitable estoppel does not apply." *Id.* at 14.

The Court disagrees that the decisions in *Townsend* or *B.F.* are dispositive here. Those cases purport to address the situation where a signatory to an arbitration agreement seeks to compel arbitration against a non-signatory. But E.V.A. is *not* a non-signatory to the EULA. For Plaintiffs to imply that she is a non-signatory ignores the central fact that was the basis for the Ninth Circuit's remand and this Court's rehearing of the motion to

---

[2]  As explained by the Ninth Circuit in *B.F. v. Amazon.com Inc.*, 858 F. App'x 218, 221 n.1 (9th Cir. 2021), the "concurring/dissenting" opinion in *Townsend*, rather than the "lead" opinion, commanded a majority of the Washington Supreme Court and is binding Washington precedent.

compel: the fact that, contrary to Plaintiff's earlier representations to this Court, E.V.A. did create her own Epic Games account, did download Fortnite, and did communicate her acceptance of the terms of the EULA. Regardless of whether her claims sound in tort or in contract, she is differently situated than the plaintiffs in *Townsend* or *B.F.* She affirmatively represented to Defendant that she agreed to the EULA.

As discussed above, the Parties agree that in November 2021, E.V.A. created her own Epic Games account to play Fortnite. ECF No. 32 at 2. Plaintiffs do not dispute that at the time of creating that account, and as a condition of downloading and playing Fortnite, E.V.A. was required to and did communicate that she had read and agreed to the EULA, and indicated that she "Accept[ed]" its terms. Defendant also provides evidence, not disputed by Plaintiffs, that the user of E.V.A.'s account again purported to accept the EULA on multiple occasions: November 18, 2023; November 19, 2023; and December 18, 2024. ECF No. 40-1 ¶ 13. In other words, E.V.A. not only expressly manifested her acceptance of the EULA before bringing this lawsuit—she did so again after she brought this lawsuit, after her counsel opposed Defendant's motion to compel based on a false representation of fact, and after this Court relied on that misrepresentation to deny the motion to compel as to her. Defendant also offers evidence of hundreds of gameplay sessions using E.V.A.'s account, including hundreds of gameplay sessions occurring after Defendant filed its motion to compel. *Id.* ¶ 20. Although E.V.A. does not bring claims for breach of contract, each and every one of her claims results from her *Fortnite* gameplay, which in turn was conditioned on her acceptance of the EULA.

Under these circumstances, the Court concludes that E.V.A.'s new argument seeks an inequitable result. Her claim that she should be treated like a non-signatory to the EULA is inconsistent with her repeated manifestations of assent to the EULA, as well as her extensive availment of the gameplay license that was reasonably granted in reliance on her assent. E.V.A.'s claims arise in connection with her exercise of this license, and as previously found by this Court, are within the scope of the arbitration provision. To allow

E.V.A. to now repudiate those manifestations of assent to avoid the arbitration provision in the EULA would be injurious and unfair to Defendant, which made agreement to that provision a precondition for playing Fortnite. E.V.A. has repeatedly sought out and received the benefits of the EULA while simultaneously attempting to avoid its burdens. Defendant has established the conditions for equitable estoppel by clear, cogent, and convincing evidence.

"[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Satomi*, 225 P.3d at 229. The Court concludes that E.V.A. has repeatedly and unequivocally indicated her agreement to arbitration of her dispute here.[3]

### III.   CONCLUSION

For the foregoing reasons, Defendant's renewed motion to compel arbitration [ECF No. 40] is **GRANTED**. The Court **ORDERS** plaintiff E.V.A. to proceed to arbitration, and her claims are **STAYED** pending the completion of arbitration proceedings pursuant to 9 U.S.C. § 3. The Parties are further **ORDERED** to file a status update on their arbitration proceedings **every ninety (90) days** and **within seven (7) days of completion of arbitration**.

IT IS SO ORDERED.

Dated: December 10, 2025

_____
Hon. Robert S. Huie
United States District Judge

---

[3]   Plaintiffs have requested a hearing on Defendant's renewed motion, citing the importance of the issues generally, as well seeking to address a "waiver" argument that Defendant raised in its reply brief. ECF No. 46. This motion is denied. The Court's decision herein is not based on waiver. Nor does the Court need oral argument to elucidate the issues in Defendant's renewed motion. The Parties have already taken numerous opportunities to address these issues, in connection with: (1) the initial motion to compel; (2) the Ninth Circuit appeal of the partial denial of that motion; and (3) the renewed motion to compel. The motions before this Court have been fully briefed on each occasion.